UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                        :

STEVEN SAFRAN,                                          :

                     Plaintiff,                     :    17-CV-1648 (     )

     -against-                            :    **COMPLAINT**

UNITED HEALTH PRODUCTS, INC.    :    **JURY TRIAL DEMANDED**
and DOUGLAS BEPLATE,               :

                   Defendants.              ::
-------------------------------------------------------------x

      Plaintiff Steven Safran ("Safran"), by and through his attorneys, Cerasia & Del Rey-Cone LLP, for his Complaint against defendants United Health Products, Inc. ("UHP") and Douglas Beplate ("Beplate") (collectively, the "Defendants"), alleges as follows:

## NATURE OF ACTION

      1.     Since commencing his employment with UHP as the Senior Vice President of Marketing in September 2014, UHP and Beplate have willfully refused and failed to pay Safran his agreed-upon annual salary of $100,000, except for approximately $8,000, and thus owe him over $200,000 in unpaid base compensation alone. Given that the Defendants continually have failed to pay Safran on a "salary basis," he also is entitled to a significant amount of overtime pay since his date of hire. Safran has repeatedly attempted, in good faith, to be paid for his work as an employee of UHP, but the Defendants have willfully refused to pay him. In fact, Beplate has blatantly retaliated against Safran by threatening him for demanding his unpaid compensation and complaining about the Defendants' violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

2.      In addition to the Defendants' refusal and failure to pay Safran all of the wages due to him, they also have failed to repay him for a $50,000 loan that he made to UHP in September 2014, failed to repay him for a $30,000 loan that he made to UHP in the Summer of 2011 to help secure the formula and procedure to manufacture in the U.S., and failed to issue him at least 250,000 shares of UHP common stock.  By failing to repay this money to Safran or issue him the stock, the Defendants are liable for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraud and misrepresentation and/or conversion.

3.      Safran has tried in good faith to obtain his unpaid wages, the shares of UHP stock and the repayment of the loans from Defendants, but they have refused to pay him this money or issue him the stock.  Instead, Beplate has threatened Safran for making the demands.  Consequently, the Defendants have given Safran no choice but to bring this lawsuit against them to obtain unpaid wages, money damages, UHP stock and equitable relief for their violations of the FLSA and NYLL and under the New York common law.

**PARTIES**

4.      Safran is a citizen of the State of New York, and has worked out of his home for UHP in Rockland County, New York.  Safran never worked for UHP in any location other than New York.

5.      UHP, which is a publicly-traded company, maintains its principal place of business in Henderson, Nevada.  During all times relevant to this lawsuit, UHP has transacted business within the State of New York and this District.

6.      Beplate, who is UHP's Chief Executive Officer and, upon information and belief, is the majority shareholder in UHP, resides in California.  During all times relevant to this lawsuit, Beplate has transacted business within the State of New York and this District.

7. At all times material hereto, UHP and/or Beplate were and are Safran's employers within the meaning of the FLSA and NYLL.

## JURSIDICTION AND VENUE

8. The causes of action which form the basis of this lawsuit arise under the FLSA, NYLL and New York common law.

9. This Court has jurisdiction over Safran's FLSA claims pursuant to 28 U.S.C. § 1331, and the Court may exercise supplemental jurisdiction over Safran's NYLL and common law claims under 28 U.S.C. § 1367(a).

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices and conduct set forth herein, occurred in this District and the Defendants transact business in this District.

## FACTUAL ALLEGATIONS

11. Safran is a well-respected marketing professional. As a result, the Defendants actively recruited him to UHP in the Fall of 2014.

12. UHP hired Safran as its Senior Vice President of Marketing in September 2014, and he has worked for UHP out of his home in Rockland County, New York since that time.

13. Upon hiring him, UHP agreed to pay Safran an annual salary of $100,000, or $8,333 per month.

14. In September 2014, Safran entered into an Employment Agreement with UHP (the "Agreement"), which was executed by Beplate on behalf of UHP. Under the terms of the Agreement, UHP promised to pay him "a base salary of . . . $8,333 . . . per month," along with "a

commission each month equal to 2½% of net sales (gross saless less returns) on his managed accounts." (Agreement, ¶ 4(a).)

15.     While Safran has continued to perform work for UHP as the Senior Vice President of Marketing since September 2014, the Defendants have willfully failed to pay Safran his salary for over two years – amounting to over $200,000 – plus interest, liquidated damages of over $200,000, and attorneys' fees under the FLSA and NYLL.  Since his date of hire, UHP has paid him wages only two times, for a total of approximately $8,000.

16.     Given that UHP has failed to pay Safran on a "salary basis" under the FLSA and NYLL, he is entitled to overtime pay for all of the hours that he has worked over 40 per week. The amount of overtime pay owed to Safran is substantial, given that he has regularly worked in excess of 60 hours per week.  Consequently, the Defendants owe Safran over $167,000 in overtime pay since October 2014 (at $72.11 per hour for 20 hours per week, or $1,442.25 per week for 116 weeks) – not including an equal amount ($167,000) in liquidated damages, which brings the total overtime pay to at least $334,000.

17.     The Defendants owe Safran over $734,000 in unpaid wages, overtime pay and liquidated damages.

18.     Despite the Defendants' willful failure to compensate Safran, he has continued to work diligently over the years.  For example, Safran was primarily responsible for securing a $20 million sale for UHP.  This success reflects Safran's continued dedication to UHP and his tireless efforts.  Indeed, Safran negotiated with the buyer-company for over a year, which resulted in UHP benefiting from one of the largest new business deals.  Safran continues to do his work and remains in discussions with other potential accounts.  Beplate recently acknowledged and

admitted that, when they buyer in question makes payments on that sale, UHP will be obligated to pay Safran a 2½% commission on that sale.

19.     In September 2014, Beplate told Safran that if he gave UHP a 30-day loan of $50,000, UHP would give Safran additional shares of common stock and repay the loan in full.  Beplate told Safran that he and UHP's Chief Financial Officer had done this, too.  In reasonable reliance on Beplate's promises, Safran made a check payable to Beplate's wife (as requested by Beplate) in the amount of $50,000 and Safran clearly stated on the check that it was a "loan" to UHP.  To date, Safran is still waiting for the loan to be repaid, as well as the additional shares of UHP common stock.  The Defendants' conduct gives rise to claims for breach of contract (including, for example, a violation of UHP's Code of Business Conduct and Ethics), breach of the covenant of good faith and fair dealing, promissory estoppel, fraud and misrepresentation and/or conversion.

20.     On November 15, 2015, Beplate strongly urged Safran to sell 1 million shares of UHP's common stock in an off-market transaction at $.45 per share, for a total of $45,000.  Beplate promised that Safran would be paid the $45,000 no later than December 2015.  In addition, Beplate unconditionally promised to provide Safran with an additional 250,000 shares of UHP common stock if Safran allowed him to hold Safran's unsold 500,000 shares for three months, which would be no later than March 1, 2016.  But, Beplate did not follow through on his false promises.  Safran continuously requested full payment for approximately 15 months, but Beplate continuously ignored his requests to be repaid in full and in a timely manner.  Beplate did not pay Safran in full for the $45,000 stock transaction until making a final installment payment of $12,500 on February 2, 2017, and that was only after Safran complained once again about the failure to pay him.  Moreover, to date, the Defendants have not issued

Safran the 250,000 additional shares of stock that Beplate promised to issue to Safran and if Safran allowed him to hold onto Safran's 500,000 unsold shares until March 1, 2016 (and Beplate did not even return the stock certificate for the 500,000 shares to Safran until February 2017). The Defendants' failure to issue Safran the 250,000 shares of common stock of UHP gives rise to claims for breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel and fraud and misrepresentation.

21. In July 2011, Safran loaned UHP and Beplate $30,000 to help UHP secure the formula and procedure to manufacture UHP product in the U.S. Beplate promised Safran that this $30,000 loan would be repaid within 45 days thereafter. To date, however, Safran has not received this money from Defendants. The failure to pay Safran this money gives rise to claims for breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, fraud and misrepresentation and/or conversion.

22. As a direct and proximate result of Defendants' unlawful conduct, Safran has incurred, and will continue to incur, a loss of wages and/or earning capacity, loss of the use of his money, emotional distress, embarrassment, humiliation, anxiety, stress, loss of self-esteem and mental anguish, the full extent of which is not known at this time.

23. Defendants' conduct, as set forth above, was malicious, willful, wanton, intentional, reckless and outrageous under the circumstances.

**FIRST CAUSE OF ACTION**
**(Violation of the FLSA for Failure to Pay Wages)**

24. Safran incorporates herein by reference paragraphs 1 through 23, as if set forth herein in their entirety.

25. The Defendants have failed to pay Safran his salary at the rate of $100,000 per year, or any other wages, except for approximately $8,000 since his date of hire. Thus,

Defendants owe Safran over $200,000 in unpaid base compensation alone, plus interest and liquidated damages.

26. Given that the Defendants continually have failed to pay Safran on a "salary basis," he also is entitled to a significant amount of overtime pay since his date of hire, in an amount of at least $167,000, plus interest and liquidated damages.

27. As a direct and proximate result of Defendants' violations of the FLSA, Safran has sustained lost wages, damages and losses set forth herein and has incurred attorneys' fees and costs.

28. Defendants' conduct was willful, wanton and demonstrated a conscious disregard for Safran's rights under the FLSA, and warrants the imposition of liquidated damages.

29. Safran is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' unlawful conduct unless and until this Court grants the relief requested herein.

## SECOND CAUSE OF ACTION
### (Retaliation Under the FLSA)

30. Safran incorporates herein by reference paragraphs 1 through 29, as if set forth herein in their entirety.

31. Safran has attempted, in good faith, to be paid for his work as an employee, but the Defendants have willfully refused to pay him. In fact, Beplate has blatantly retaliated against Safran by threatening him in late-2016 and early-2017 for demanding his unpaid compensation and complaining about the Defendants' violations of the FLSA.

32. As a direct and proximate result of Defendants' retaliation under the FLSA, Safran has sustained the injuries, compensatory damages and losses set forth herein and has incurred attorneys' fees and costs.

33. Defendants' conduct was willful, wanton and demonstrated a conscious disregard for Safran's rights under the FLSA, and warrants the imposition of liquidated damages.

34. Safran is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' unlawful conduct unless and until this Court grants the relief requested herein.

## THIRD CAUSE OF ACTION
### (Violation of the NYLL for Failure to Pay Wages)

35. Safran incorporates herein by reference paragraphs 1 through 34, as if set forth herein in their entirety.

36. The Defendants have failed to pay Safran his salary at the rate of $100,000 per year, or any other wages, except for approximately $8,000 since his date of hire. Thus, Defendants owe Safran over $200,000 in unpaid base compensation alone, plus interest and liquidated damages.

37. Given that the Defendants continually have failed to pay Safran on a "salary basis," he also is entitled to a significant amount of overtime pay since his date of hire, in an amount of at least $167,000, plus interest and liquidated damages.

38. As a direct and proximate result of Defendants' violations of the NYLL, Safran has sustained lost wages, damages and losses set forth herein and has incurred attorneys' fees and costs.

39. Defendants' conduct was willful, wanton and demonstrated a conscious disregard for Safran's rights under the NYLL, and warrants the imposition of liquidated damages.

40. Safran is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' unlawful conduct unless and until this Court grants the relief requested herein.

## FOURTH CAUSE OF ACTION
### (Retaliation Under the NYLL)

41.     Safran incorporates herein by reference paragraphs 1 through 40, as if set forth herein in their entirety.

42.     Safran has attempted, in good faith, to be paid for his work as an employee, but the Defendants have willfully refused to pay him.  In fact, Beplate has blatantly retaliated against Safran by threatening him in late-2016 and early-2017 for demanding his unpaid compensation and complaining about the Defendants' violations of the NYLL.

43.     As a direct and proximate result of Defendants' retaliation under the NYLL, Safran has sustained the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

44.     Defendants' conduct was willful, wanton and demonstrated a conscious disregard for Safran's rights under the NYLL, and warrants the imposition of liquidated damages.

45.     Safran is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' unlawful conduct unless and until this Court grants the relief requested herein.

## FIFTH CAUSE OF ACTION
### (Breach of Contract)

46.     Safran incorporates herein by reference paragraphs 1 through 45, as if set forth herein in their entirety.

47.     Under the terms of the Agreement, the Defendants were obligated to pay Safran an annual salary of $100,000, but have failed to do so.  Rather, UHP has paid him about $8,000 only.  By failing to pay Safran his agreed-upon salary, the Defendants have breached the Agreement and/or oral agreement.

48.     The Defendants promised to repay Safran for his 2011 and 2014 loans to UHP, in the total amount of $80,000, but have not done so.  By failing to repay these loans to Safran, the Defendants have breached their contract with Safran.

49.     The Defendants promised to issue Safran 250,000 shares of common stock of UHP in November 2015 and other shares in September 2014, but have not done so.  By failing to issue these shares of UHP to Safran, the Defendants have breached their contract with Safran.

50.     As a direct result of the Defendants' breach of their agreements with Safran, he has sustained damages in the amount of over $200,000 in lost earnings, $80,000 for the loans and the value of at least 250,000 shares of common stock of UHP, plus interest and attorneys' fees.

## SIXTH CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

51.     Safran incorporates herein by reference paragraphs 1 through 50, as if set forth herein in their entirety.

52.     Under the terms of the Agreement, the Defendants were obligated to pay Safran an annual salary of $100,000, but have failed to do so.  Rather, UHP has paid him about $8,000 only.  By failing to pay Safran his agreed-upon salary, the Defendants have breached the implied covenant of good faith and fair dealing.

53.     The Defendants promised to repay Safran for his 2011 and 2014 loans to UHP, in the total amount of $80,000, but have not done so.  By failing to repay these loans to Safran, the Defendants have breached the implied covenant of good faith and fair dealing.

54.     The Defendants promised to issue Safran 250,000 shares of common stock of UHP in November 2015 and other shares in September 2014, but have not done so.  By failing to issue these shares of UHP to Safran, the Defendants have breached the implied covenant of good faith and fair dealing.

55. As a direct result of the Defendants' breach of the implied covenant of good faith and fair dealing in connection with their agreements with Safran, he has sustained damages in the amount of over $200,000 in lost earnings, $80,000 for the loans and the value of at least 250,000 shares of common stock of UHP, plus interest and attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (Promissory Estoppel)

56. Safran incorporates herein by reference paragraphs 1 through 55, as if set forth herein in their entirety.

57. Upon hiring Safran, the Defendants' promised his that they would compensate him for his work at the rate of $100,000 per year. Safran, in good-faith and reasonable reliance on Defendants' promises and representations, accepted the offer to be employed by UHP and has continually performed work for UHP without compensation.

58. The Defendants promised to repay Safran for his 2011 and 2014 loans to UHP, in the total amount of $80,000, but have not done so. In making those loans to Defendants, Safran reasonably relied in good faith and to his detriment on the Defendants' promises and representations that they would repay him for those loans.

59. The Defendants promised to issue Safran 250,000 shares of common stock of UHP in November 2015 and other shares in September 2014, but have not done so. Safran reasonably relied in good faith and to his detriment on the Defendants' promises and representations that they would issue him these shares of common stock if Beplate could hold onto Safran's 500,000 shares of common stock of UHP until March 2016.

60. By failing to repay these loans to Safran or issue him at least 250,000 shares of common stock of UHP, the Defendants are liable under promissory estoppel.

61. As a direct result of the Defendants' failure to adhere to and honor their promises and representations to Safran, on which he detrimentally and reasonably relied, he has sustained damages in the amount of over $200,000 in lost earnings, $80,000 for the loans and the value of at least 250,000 shares of common stock of UHP, plus interest and attorneys' fees.

## EIGHTH CAUSE OF ACTION
### (Fraud and Misrepresention)

62. Safran incorporates herein by reference paragraphs 1 through 61, as if set forth herein in their entirety

63. Upon hiring Safran, the Defendants' falsely promised his that they would compensate him for his work at the rate of $100,000 per year. Safran, in good-faith reliance on Defendants' promises and representations and without knowing them to be false, accepted the offer to be employed by UHP and has continually performed work for UHP without compensation.

64. The Defendants falsely promised to repay Safran for his 2011 and 2014 loans to UHP, in the total amount of $80,000. In making those loans to Defendants, Safran relied in good faith and to his detriment on the Defendants' false promises and representations that they would repay him for those loans.

65. By accepting the loans and failing to repay these loans to Safran, the Defendants engaged in fraud and misrepresentation.

66. The Defendants falsely promised to issue Safran 250,000 shares of common stock of UHP in November 2015 and other shares in September 2014, but have not done so. Safran reasonably relied in good faith on the Defendants' false promises and representations that they would issue him these shares of common stock if Beplate could hold onto Safran's 500,000 shares of common stock of UHP until March 2016.

67. As a direct result of the Defendants' fraud and misrepresentations, on which Safran reasonably and detrimentally relied without knowing that they were false, he has sustained damages in the amount of over $200,000 in lost earnings, $80,000 for the loans and the value of at least 250,000 shares of common stock of UHP, plus interest and attorneys' fees.

## NINTH CAUSE OF ACTION
### (Conversion of $80,000 in Loans)

68. Safran incorporates herein by reference paragraphs 1 through 67, as if set forth herein in their entirety.

69. Defendants received two loans from Safran: $30,000 in 2011 and $50,000 in 2014. The Defendants were obligated to repay those loans to Safran and, despite promising to do so, have not done so.

70. By failing to repay the loans to Safran and continuing to keep the proceeds of the loans, the Defendants have wrongfully converted property belonging to Safran.

71. As a direct and proximate result of the Defendants' wrongful possession and conversion of the loans, Safran has sustained the damages and losses set forth herein – namely, $80,000 plus interest – and has incurred attorneys' fees and costs.

72. The Defendants' conduct was willful and also warrants the imposition of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Safran prays that this Court enter judgment in his favor and against the Defendants, jointly and severally, and grant to him the following relief:

  A. A declaratory judgment that the actions, conduct and practices of the Defendants complained of herein violate the FLSA and NYLL;

  B. A declaratory judgment that the actions, conduct and practices of the Defendants complained of herein constitute a breach of contract;

  C. A declaratory judgment that the actions, conduct and practices of the Defendants complained of herein constitute a breach of the covenant of good faith and fair dealing;

  D. A declaratory judgment that the actions, conduct and practices of the Defendants complained of herein constitute fraud and misrepresentation;

  E. A declaratory judgment that the actions, conduct and practices of the Defendants complained of herein constitute promissory estoppel;

  F. A declaratory judgment that the actions, conduct and practices of the Defendants complained of herein constitute the conversion of property;

  G. An order restraining the Defendants from engaging in continuing unlawful conduct toward Safran, including an order directing the Defendants to take such affirmative action as is necessary to ensure that the effects of their unlawful practices and conduct end and do not continue to affect Safran's employment or personal life;

  H. An award for all lost wages and economic damages to be determined at trial, plus pre-judgment interest, to compensate Safran for the Defendants' unlawful conduct, including back pay and overtime pay;

   I. An award for all compensatory damages to be determined at trial, plus pre-judgment and post-judgment interest, to compensate Safran for future pecuniary losses, emotional distress, pain, suffering, inconvenience, mental anguish, stress, anxiety, humiliation, embarrassment, loss of enjoyment of life and other nonpecuniary losses as allowable;

   J. An award to Safran against the Defendants for liquidated and punitive damages;

   K. An order requiring the Defendants to issue Safran at least 250,000 shares of UHP common stock;

   L. An award to Safran for the costs incurred in this lawsuit, together with reasonable attorneys' fees; and

   M. An award to Safran such other and further relief as this Court deems appropriate.

## JURY DEMAND

Safran demands a trial by jury on all issues of fact, his claims and damages herein.

Dated: New York, New York
   March 6, 2017

          CERASIA & DEL REY-CONE LLP

          By  s/ Edward Cerasia II
           Edward Cerasia II
          150 Broadway, Suite 1517
          New York, New York 10038
          646.525.4235

          Attorneys for Plaintiff
          *Steven Safran*