HOWARD R. BIRNBACH, ESQ.
New York Bar No. 1168698 (admitted pro hac vice)
111 Great Neck Road, Suite 205
516-829-6305
516-829-0651 (fax)
hrbatlaw@aol.com
*Attorney for Defendants*

FRANK H. COFER III, ESQ.
Nevada Bar No. 11362
COFER & GELLER, LLC
601 South Tenth Street
Las Vegas, Nevada 89101
(702) 777-9999
(702) 777-9995 fax
fcofer@cofergeller.com
*Local Counsel for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| STEVEN SAFRAN,<br><br>     *Plaintiff,*<br><br>     *vs.*<br><br>UNITED HEALTH PRODUCTS, INC. and<br>DOUGLAS BEPLATE,<br><br>     *Defendants.* | Case No.  2:18-cv-00158-JAD-CWH<br><br>**DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT** |

     COME NOW the Defendants, UNITED HEALTH PRODUCTS, INC. and DOUGLAS BEPLATE, by and through their attorney of record, HOWARD R. BIRNBACH, ESQ., and hereby file their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

     This motion is made and based upon the Affidavit of Douglas Beplate (Exhibit K filed herewith), the pleadings or other papers on file herein, the following memorandum of points and authorities, and the argument of counsel if requested by the Court.

**QUESTIONS PRESENTED**

1.      Whether the Plaintiff may be terminated for the dissemination of pornographic cartoons to fellow employees.

2.      Whether alleged loans issued by New York parties from a New York bank are governed by New York law.

3.      Whether a New York loan issued in violation of the usury law is collectible in a court of law.

4.      Whether a corporate salesperson who works out of his home in New York State may have a viable claim for minimum wages and overtime wages.

5.      Whether the plaintiff may simply reword his breach of contract action to assert claims for fraud conversion and promissory estoppel.

6.      Whether the defendants may amend their complaint to assert statutory defenses that do not require additional discovery or delay a potential trial.

7.      Whether a retaliation claim is viable if the alleged threat has no connection to the wage claim.

8.      Whether the loan claims omit indispensable parties.

9.      Whether this Court should allow the Answer to be amended to assert additional affirmative defenses.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FACTS NOT IN GENUINE CONTROVERSY

1.      The plaintiff, Steven Safran, "is a citizen of the State of New York and worked out of his house for United Health Products, Inc. in Rockland County, New York". Third Amended Complaint § 8.

2.      He only worked out of his house and did not work out of any other location. Third Amended Complaint § 8.

3.      Safran is a well-respected marketing professional. Third Amended Complaint § 15.

4.      United Health Products, Inc. hired Safran as its Senior Vice President of Marketing in September 2014.  Third Amended Complaint § 16.

5.      On September 15, 2014, the parties entered into an Employment Agreement. Third Amended Complaint § 17.

6.      The contract contained the following choice of the law provision:

Governing Law:  This Agreement shall be governed by, construed and enforced in accordance with the internal laws of the State of Nevada, without giving reference to principles of conflict of laws.  Any lawsuit commenced under the terms of this Agreement shall be commenced in a federal and/or state court located in Las Vegas, Nevada.

Employment Agreement, section 19.

7.      The plaintiff, in his deposition, defined his responsibilities as follows:

Q. When you started working at United Health Products, did you have a title?

A.      Yes.

Q.      What was that title?

A.      It's on the employment contract; senior vice president of marketing.

Q.      What were your duties and responsibilities?

A.      To help make money for the company.

Q.      But what exactly were you expected to do?

A.     It wasn't clearly defined, so what I took it to be was to help secure companies to buy the product and then I also worked with the distributors indirectly and shared with them information that I had on competitive analyses and anything that would be appropriate, but it was primarily focused on sales.

Safran Deposition, 12:4 – 12:22 (emphasis added).

8.     Plaintiff is alleging that on July 2011, he loaned the defendants the sum of Thirty Thousand ($30,000) Dollars.  Third Amended Complaint § 27.

9.     Paragraph 27 of the Third Amended Complaint states as follows:

In July 2011, prior to commencing employment with UHP, Safran also loaned UHP and Beplate $30,000 to help UHP secure the formula and procedure to manufacture UHP product in the U.S.  In an email dated July 26, 2011, Beplate promised Safran that the $30,000 loan would be repaid within 45 days thereafter.  Specifically, Beplate stated: "Steve Safran advance 30k US Dollars to Beplate – In return Steven Safran receives 475K free trading shares and the return of the 30k (note) from Beplate Payable within 45 days."  A true and correct copy of the July 26 email is attached as Exhibit C.  To date, however, neither Beplate nor UHP has  repaid Safran the $30,000 for the loan.  The failure to pay Safran this money gives rise to claims for breach of contract, breach of the covenant of goof faith and fair dealing, promissory estoppel, fraud and misrepresentation and/or conversion.

10.     The July 26, 2011 email states as follows:

Steve – The following will be for consideration of 30k US Dollars into Beplate and Associates to assist in securing the formula and procedure to manufacture and process in the USA. Steve Safran advances 30k US Dollars to Beplate – In return Steve Safran receives 475k free trading shares and the return of the 30k (note) from Beplate payable within 45 days.  It is further understood Steve Safran may buy additional free trading stock from Beplate after the note or 30k has been honored or if Steve Safran wishes to convert any of the 30k upon the note being honored.  The additional buy of free trading stock may not be more than an cumulative total of 1.25M shares. (355k presently, 475k with the advance remaining, 420k at .045).

The July 26, 2011 email is annexed to the motion as "Exhibit H".

11.     The $30,000 transfer of funds was from a wire transfer from the New York bank account of the plaintiff and his wife Lynn Ellenbogen.

12.     The value of the 475,000 free trading shares on the maturity date was $14,725.  Beplate Affidavit § 14.

4

13.     The plaintiff also alleges a $50,000 loan from the plaintiff to the defendants. Third Amended Complaint § 26.

14.     The aforementioned loan had a thirty (30) day maturity and was to be paid back with 250,000 United Health Products, Inc. stock.  Safran Deposition, page 49.

15.     The value of the stock at the time of the maturity date was .0949 per share. Beplate Affidavit § 22.

16.     Neither alleged loan transaction involved the publication of a promissory note.  Safran Deposition § 49.

17.     The $30,000 wire was sent to the bank account of Wendy Harper. Defendants' Exhibit "G".

18.     The $50,000 "loan" check was made payable to Wendy Harper.  Defendants' Exhibit "I".

19.     Wendy Harper is not a party to this action.

20.     Lynn Ellenbogen is not a party to this action.

21.     Beplate & Associates is not a party to this action.

22.     The plaintiff is suing for commission on a 20 Million Dollar transaction that never closed.  Third Amended Complaint §§ 3, 36, 40, 47, 79, 86.

23.     The plaintiff conceded under oath that the California transaction was never consummated and that he earned no commission.  Safran Deposition, pages 64-65, 67-68.

24.     The plaintiff, under oath at his deposition, swore that he did not maintain contemporaneous time sheets or any time sheets and could state with any level of precision how many hours that he in fact worked at any given time. Safran Deposition, pages 54-55.

25.     The plaintiff also alleges that he was retaliated against for asserting his wages claims. Third Amended Complaint §§ 62-67, 51-56.

26.     The alleged retaliation was that the employer would air "dirty laundry" on the plaintiff if he asserted his wages claims.  Third Amended Complaint §29.

27.     Beplate never defined the term "dirty laundry" and the plaintiff never made inquiry as to what the term meant.  Safran Deposition, pages 75-77.

28.     The plaintiff also alleged retaliation for the defendant alleging that there was

5

an ongoing SEC investigation against him.  Third Amended Complaint § 31.

29.    The alleged threat to the SEC concerning inside trading had no connection to any claim for overtime and minimum wages. Safran Deposition, pages 77-78.

30.    The alleged threat was one of a class action shareholder suit which never took place. Safran Deposition, pages 77-78.

31.    The plaintiff determined that there was no ongoing SEC investigation.  Third Amended Complaint § 31.

32.    The defendants never stated that the alleged SEC investigation was connected to the plaintiff's claim for minimum and overtime wages.  Third Amended Complaint § 31.

33.    On February 7, 2015, the plaintiff published and distributed pornographic cartoons to fellow corporate employees.  Defendants' Exhibit "J".

34.    In paragraph 28 of the Third Amended Complaint, the plaintiff alleges that he was entitled to 250,000 shares of UHP common stock and the plaintiff allowed the defendants to hold Safran's 500,000 unsold shares for the month.   Third Amended Complaint § 28.

35.    The defendants returned the 500,000 shares to the plaintiff. Safran Deposition, page 72.

**ARGUMENT**

POINT ONE

THE NINTH CAUSE OF ACTION FOR

PROMISSORY ESTOPPEL IS NOT VIABLE

The plaintiff asserts a cause of action based upon the claim that there was a breach of employment contract and failure to pay two (2) loans.  Third Amended Complaint §§ 77-83.

However, one cannot simply restate a breach of contract action in the guise of promissory estoppel.

In Nevada, a party asserting promissory estoppel must be ignorant of the true facts and his adversary must be unaware of the truth and is seeking to victimize the plaintiff because of his ignorance. In fact, it is not a wholly distinct cause of action.  Dynalectric Co. of Nevada Inc. v. Clark & Sullivan Contractors, Inc., 255 P.3d 286 (Nev. 2011).

In this case at bar, the doctrine of promissory estoppel offers the plaintiff no new claim for damages.

If there is a default on a loan, the party is entitled to the balance due together with interest.

On a breach of employment contract claim, the party is entitled to lost wages.

The promissory estoppel claims add absolutely nothing to the breach of contract causes of action.

It is also noteworthy that the plaintiff was an at-will employee, see Defendants' Exhibit A, § 7 page 3, and therefore has no promissory estoppel claim under the employment agreement.  Vancheri v. GNLV Corp. 777 P.2d 366 (Supr. Ct. Nev. 1989).

The United States District Court in Nevada, applying Nevada law, held that a promissory estoppel claim exists to provide a remedy in equity where there is no contract due to a lack of consideration.  Duate v. Wells Fargo Bank, No.3:13 cir. 00371-RJC-VPC,

1   2014 WL 585802.

2       In the case at bar, there is a written employment contract and a breach of contract

3   claim based upon two (2) loans.

4       In sum, there is no independent cause of action for promissory estoppel and, if one

5   exists, it is not applicable to cases when a contracts rights are available.

POINT TWO

THE TENTH CAUSE OF ACTION FOR

FRAUD IS NOT ACTIONABLE

The plaintiff alleges that he was the victim of fraud and misrepresentation when he signed the employment contract and made two (2) loans to the defendants.  Third Amended Complaint § 84-91.

He also claims that he was entitled to a commission from a $20 million-dollar deal even though he admits that the deal was aborted.  Third Amended Complaint § 86.

At his deposition, Safran swore that the deal never went through, and therefore was entitled to nothing.  Safran Deposition, pages 64-65, 67-68.

It is abundantly clear that the plaintiff has merely chosen to cloak his breach of contract claims in the guise of fraud and misrepresentation.  Bulbman, Inc. v. Nevada Bell, 108 Nev. 105, 112, 825 P.2d 588, 592 (1992); see also Terracon Consultants Western Inc. v. Mandlay Rest Group., 206 P.3d 81 (Nev. 2009).

The courts will not countenance fraud claims created by adding no new facts and simply rewording the language of the claim.

One must also allege justifiable reliance to support a fraud claim.  Montes v. Bank of Am., N.A., 2014 U.S. Dist. LEXIS 51855 (Dist. Ct. Nev. 2014).

In sum, one cannot create new causes of action for a fraud where it is simply a restatement of the original claim by adding the element of scienter.

POINT THREE

THE LOANS ARE USURIOUS

AND ARE NOT ENFORCEABLE

The seventh, eight, ninth and tenth causes of action allege failure to repay two (2) loans.

The plaintiff may employ different theories of law, but in each claim the gravamen is that monies were loaned and not repaid.

There is no question of fact that the plaintiff is a New York citizen, who with his wife, who is also a New York citizen, issued both a wire transfer and a check from the New York State banks.

There is no promissory note, and therefore, no choice of law provisions.

The loans were to be repaid back in New York where they were issued.

Moreover, the two (2) loans, one for thirty (30) days and the other for forty-five (45) days require repayment with common stock that vastly exceeds the 16% per annum usury loan limit and 25% per annum rate for corporations.

In New York, a usurious contract is void and the borrowers are relieved from any responsibility to pay the loan.  Venables v. Sagona, 85 A.D. 3d, 904, 925 N.Y.S 2d 578, 580 (2nd Dept. 2011).

Thus, the only issue is which law applies.

The lenders can hardly claim prejudice if the law of their jurisdiction is being implemented.

It is also significant to note that the plaintiff instituted this suit in the State of New York.

"In general, the Court will apply Ninth Circuit law to federal claims and will apply the state of law of the transferor forum, including the transferred form's clause of law rules to state law claims." In Re Nucorp Energy Sec. Litigation, 772 F2d 1486, 1491-92 (9th Cir. 1985), Putnam Bank v. Countrywide Fin. Corp., 860 F. Supp.2d 1062, 1067 (Dist. Ct.

California 2012). <u>See</u> <u>also</u> <u>Pocino Foods Co. v. UPS</u>, 2014 U.S. App LEXIS 1423 (9th Cir. 2014).

Pursuant to New York law, both loans are usurious and therefore uncollectible.

POINT FOUR

PLAINTIFF HAS NO CLAIM UNDER

THE FEDERAL FAIR LABOR STANDARDS ACT

OR THE NEW YORK LABOR LAW

Plaintiff has sworn in his Third Amended Complaint that he worked out of his Rockland County, New York house as an outside sales employee. Third Amended Complaint § 8.

At his deposition, he testified as follows:

Q.    What were your duties and responsibilities?

A.    To help make money for the company.

Q.    But what exactly were you expected to do?

A.    It wasn't clearly defined, so what I took it to be was to help secure companies to buy the product and then I also worked with the distributors indirectly and shared with them information that I had on competitive analyses and anything that would be appropriate, but it was primarily focused on sales.

Safran Deposition, 12:10—22.

The Fair Labor Standards Act (FLSA) exempts from its minimum wage and overtime standards employees who qualify as outside sales employees. 29 USC 213(a)(1); 29 CFR 541.500-504 (a).  For an employee to qualify for the outside sales employee exemption, the following criteria must be met:

- have the primary duty of:
  - making sales, or
  - obtaining orders or contracts for services or the use of facilities;
  - customarily and regularly perform his or her primary duty away from the employer's place of business.

29 CFR 541.500 (a).

The third cause of action alleges a violation of the New York Labor Law. However, that law has the same exemption.  N.Y. Labor Law § 651 (5) (d).

12

1    Thus, the plaintiff will not fare any better under either claim.[1]

2    Indeed, Nevada also has the same exemption.  NRS 608.250(c).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

_____

27    [1] It is the position of the defendants that under the choice of law provision in the
28    employment agreement, one cannot assert alleged violations under the New York Labor
Law.

POINT FIVE

THE CONVERSION CLAIM

IS NOT ACTIONABLE

The eleventh cause of action is for conversion.

The plaintiff alleges that the failure to pay a loan constitutes conversion. Third Amended Complaint §§ 92-96.

A claim for conversion "cannot be predicated upon a mere breach of contract." (Citation omitted). Rather to state a claim for conversion, a plaintiff must allege "independent facts sufficient to give rise to tort liability." Costoso v. Bank of Am, N.A., 74 F. Supp 3d 558, 574 (E.D.N.Y. 2013). See also Couturier v. Am. Ins. Co. Corp., 10F. Sup 3d, 1143, 1154 (Dist. Ct. Nev. 2014).

This claim must be dismissed as well.

<u>POINT SIX</u>

THE PLAINTIFF CANNOT PROSECUTE

HIS OVERTIME WAGE CLAIMS

The plaintiff swore at his deposition that he has maintained no records whatsoever of his time sheets as a salesperson and has no recollection of time expended for any particular time frame. Safran Deposition, 54—55.

Since the plaintiff worked out of his New York house, it would be impossible for the defendant to know the schedule of their out-of-state sales employee.

Simply put, no records exist of the hourly wages allegedly earned by the plaintiff.

Any claim used will be pure speculation and mere guesswork. <u>Allstate Ins. Co. v. Nossiri,</u> 2010 U.S. Dist. LEXIS 138220 (Dist. Ct. Nev. 2010); <u>see</u> <u>also</u> <u>Fortunet Inc. v. Gometech Ariz. Corp.,</u> 2008 U.S. Dist. LEXIS 96565 (Dist. Ct. Nev. 2008).

In sum, since the plaintiff is completely unable to quantify his alleged overtime hours, and no records exist to support his claim, the cause of action should be dismissed.

<u>POINT SEVEN</u>

THE RETALIATION CLAIMS

ARE NOT VIABLE

The plaintiff alleges retaliation under the Fair Labor Standards Act (sixth cause of action) and the New York Labor Law (fourth cause of action).

The law states:

After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person-

[...]

(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

29 U.S. Code § 215(a)(3).

Initially, it bears emphasis that the plaintiff has no viable claims under the FLSA and New York Labor Law (Point Four).

Thus, the retaliation claims can be no more viable.

Second, according to the complaint, the termination was effective April 28, 2017. Third Amended Complaint § 2.

The plaintiff alleges two types of retaliation.

It alleged that <u>after</u> the discharge, the plaintiff was allegedly told that the Securities Exchange Commission was looking into a prior sale of corporate stock by him. Third Amended Complaint §31.

As a matter of law, this is <u>not</u> a threat.  Beplate did not threaten to do anything.

According to the complaint, it is alleged that Beplate believed that the SEC was investigating the plaintiff for inside trading.

According to the complaint, the SEC investigation was ongoing.

There is no allegation that Beplate provoked the alleged investigation or was threatening to be involved in the SEC investigation.

16

1    The complaint further alleged that the plaintiff investigated the rumor and found it
2    to be false.  Third Amended Complaint § 31.

3    Thus, the plaintiff is alleging that <u>after</u> his discharge, Beplate told him of a rumor
4    that he was being investigated for insider trading and that the rumor turned out to be false.

5    There is no nexus alleged between the rumor and the FLSA and no nexus between
6    the rumor and any wrongdoing by the defendants.

7    There must be a nexus between the wage complaint and the retaliation claim.
8    <u>Richard v. Carson Tehoe Regional Healthcare</u>, 2016 U.S. App. LEXIS 3932 (9th Cir. 2016).

9    The other claim is that the defendants threaten to expose "dirty laundry" on the
10   plaintiff.

11   At no time did the defendant ever state what the term "dirty laundry" meant and at
12   no time did the plaintiff inquire. Safran Deposition, pages 75-77.

13   There was no allegation in the pleading or the deposition that the defendants stated
14   that they would air the "dirty laundry" if an FLSA complaint was filed.

15   Thus, the "threat" is nebulous at best and is no way connected to any allegations of
16   minimum and overtime wage allegations.

17   In sum, there are no federal or state wage violations, and the "threats" alleged do not
18   constitute retaliation as a matter of law.

POINT EIGHT

THE LOAN CLAIMS

OMIT INDISPENSIBLE PARTIES

The $50,000 loan check was authored from a bank account of the plaintiff and his wife, Lynn Ellenbogen. The $30,000 wire was also from a bank account of the plaintiff and his wife, Lynn Ellenbogen.

The wired proceeds were to go to Beplate and Associates. Safran Deposition at 50.

Thus, the instant suit fails to name a party to the claim, and on one loan, the actual recipient of the loan monies.

The case cannot be prosecuted in its present form.

Fed. Rule Civ. Pro. § 19(a) states:

(1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that  person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The "loan" proceeds were marital assets and Lynn Ellenbogen certainly has standing to prosecute the "loans" allegedly in default.

The actual borrower in interest should certainly be named as a defendant.

POINT NINE

THE ANSWER SHOULD

BE AMENDED

The defendants seek to raise three affirmative defenses based upon statute. The defendants wish to raise the affirmative defenses of usury, that the plaintiff was an outside salesman and was not entitled to overtime or minimum wages and the failure to name and join necessary and indispensable parties.

These amendments will not create the need for any further discovery and will not delay a trial should the motion prove to be unsuccessful.

There are no new revelations here.

The plaintiff knew that the usury defense would be asserted and also chose not to name his wife and Beplate & Associates as parties even though his wife's account was used to issue the two (2) loans and Beplate & Associates was the intended recipient of one of the loans.

The plaintiff also knew that he was an outside salesperson and there could be statutory defenses to his prayer for overtime and minimum wages.

F. Rule Civ. Pro. § 15 (a)(2) states:

In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

The plaintiff's description of his job, which was given at his deposition, Safran Deposition at 12, is the basis for the motion to dismiss the labor law claims.

The motion could not be made until discovery was complete.[2]

The deposition was also required for the usury defenses because the plaintiff denies that there is any connection between the monies to be paid back for the principle and interest on the loan.

_____

[2] The alternative would be multiple motions for summary judgment, which are highly disfavored.

19

1   It is noteworthy that early in this action, the plaintiff was put on notice that the usury
2   defense would be advanced.  *See* Exhibit E**.**
3   Bono Fide Conglomerate, Inc. v. Source America, U.S. Dist. Ct. (So. Dist. Of Calif.)
4   Case No.:  14-cv-0751-GFC-DMB, page 4.
5   The new affirmative defense simply notes that his status as an out-of-office
6   salesperson is a further ground that the statutory scheme does not apply to him.
7   In sum, there is no surprise herein, the defenses have great merit and a potential
8   trial will not be delayed.
9   No credible case for prejudice can be asserted.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For all of the above and foregoing reasons, the Defendants herein respectfully request that their motion for summary judgment be granted, or in the alternative, that partial summary judgment be entered and that leave be granted for the Answer to be amended.

DATED this 4th day of December, 2018.

Respectfully submitted,

*/s/ Howard Birnbach*
_____
HOWARD R. BIRNBACH, ESQ.
NY Bar No. 1168698 (pro hac vice)
111 Great Neck Road, Suite 205
516-829-6305
516-829-0651 (fax)
hrbatlaw@aol.com
*Attorney for Defendants*

FRANK H. COFER, ESQ.
Nevada Bar No. 11362
COFER & GELLER, LLC
601 South Tenth Street
Las Vegas, Nevada 89101
(702) 777-9999
(702) 777-9995 fax
fcofer@cofergeller.com
*Local Counsel for Defendants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 4th day of December, 2018, a true and correct copy of the above and foregoing DEFENDANT'S MOTION FOR SUMMARY JUDGMENT was served via the Court's CM/ECF system upon all parties to this action.

*/s/ April Burt*

_____

APRIL B. BURT
An employee of COFER & GELLER, LLC