**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Steven Safran, | Case No.: 2:18-cv-00158-JAD-DJA |
| Plaintiff | **Order (1) Granting in Part and Denying in Part Defendants' Motion for Summary Judgment and (2) Granting Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims** |
| v. | |
| United Health Products, Inc. and Douglas Beplate, | |
| Defendants | [ECF Nos. 65, 66] |

Defendants United Health Products, Inc. (UHP) and its president Douglas Beplate hired plaintiff Steven Safran as Vice President of Marketing in 2014, promising a salary of over $8,000 monthly.  Safran also loaned UHP and Beplate $80,000 to fund the company's expansion.  UHP never repaid the loans and only paid Safran twice during the three years that he claims he worked there.  Safran originally sued in the United States District Court for the Southern District of New York, but the parties later stipulated to transfer to this district.  In his third amended complaint, Safran asserts 11 claims, including breach of contract, fraud, conversion, and violations of the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL).  The defendants bring counterclaims for attorney's fees under the employment agreement's forum-selection clause and for the compensation paid to Safran under the faithless-servant doctrine.

The defendants move for summary judgment on Safran's promissory-estoppel, conversion, fraud, FLSA, NYLL, and retaliation claims.  Safran moves for summary judgment on the defendants' counterclaims.  I grant summary judgment in favor of the defendants on Safran's retaliation claims because the alleged threats do not constitute adverse employment actions, but I deny the defendants' motion in all other respects.  I grant Safran's motion because

the defendants' counterclaims fail as a matter of law. And I order the parties to participate in a mandatory settlement conference with the magistrate judge.

### Background

UHP hired Safran in September 2014 as Vice President of Marketing.[1] The parties signed an employment agreement, which provided for base compensation of $8,333 per month.[2] The agreement further provided that Safran could work "from his home office so long as [he] is able to perform the duties associated with Vice President of Marketing . . . ."[3] The agreement also included a forum-selection clause providing that "[a]ny lawsuit commenced under [its] terms" should be litigated in Las Vegas, Nevada.[4] During his employment, Safran was responsible for marketing and selling UHP's gauze products to potential customers.[5] Safran worked out of his home office in New York, but also made 18 client visits between September 2014 and January 2016.[6] UHP only paid his monthly salary twice—in October 2014 and March 2015—and paid him $8,000 instead of the $8,333 specified in the employment agreement.[7]

Several years earlier, Safran loaned Beplate and UHP $30,000 to help fund expansion.[8] In return, Beplate promised Safran 475,000 shares and return of the $30,000 within 45 days.[9] Per Beplate's instructions, Safran wired the funds to an account controlled by Beplate's wife,

---

[1] ECF No. 66-1 at ¶ 2.

[2] ECF No. 33-1 at 3.

[3] *Id.* at 2.

[4] *Id.* at 6.

[5] ECF No. 66-1 at ¶ 3.

[6] *Id.* at ¶¶ 4–5.

[7] *Id.* at ¶ 7; ECF No. 66-3 at 7.

[8] ECF No. 66-1 at ¶ 25.

[9] ECF No. 33-1 at 11.

Wendy Harper.[10]  The month that Safran began working at UHP, he loaned Beplate another $50,000 in exchange for 250,000 shares and repayment within 30 days.[11]  Per Beplate's instructions, Safran wrote a check to Harper, noting "Loan to United Health Products" in the memo line.[12]

On February 6, 2015, Safran complained to Beplate about UHP's failure to pay his salary.[13]  That same month, Safran sent an email to several coworkers attaching cartoons containing sexual jokes and imagery.[14]  Beplate claims that, in a phone call on February 13, 2015, he told Safran that he was terminating Safran's employment due to the "pornographic" cartoons.[15]  Safran disputes that he was terminated in February 2015 and says that he only learned of the termination after this lawsuit was filed.[16]  Indeed, Safran continued to contact customers and UHP continued to pay Safran's expense reports after February 2015.[17]  Beplate testified that Safran was a "commissioned salesperson" during this period.[18]  During this time, Safran did not maintain records of his work hours, but he claims that he worked at least sixty hours per week for UHP.[19]

In December 2016, Safran complained again about UHP's failure to pay his salary.[20]  The

---

[10] ECF No. 66-1 at ¶ 25.

[11] *Id.* at ¶ 27.

[12] ECF No. 33-1 at 9.

[13] ECF No. 66-1 at ¶ 20.

[14] ECF Nos. 65-11; 66-3 at 14.

[15] ECF No. 66-3 at 7–8, 16.

[16] ECF No. 66-1 at ¶ 9.

[17] *Id.* at ¶¶ 14, 16; ECF No. 66-3 at 22–23.

[18] ECF No. 66-3 at 17.

[19] ECF No. 66-1 at ¶ 18.

[20] *Id.* at ¶ 22.

next month, Safran's attorney sent a written complaint about the missing wages.[21]  Beplate then sent Safran a text message threatening to air Safran's "dirty laundry."[22]  After this lawsuit was filed that March, Beplate told Safran that the Securities and Exchange Commission was investigating him for securities-law violations.[23]  Safran hired a securities lawyer, who learned that Beplate's information was false.[24]  Safran then gave notice of his constructive discharge from UHP on April 24, 2017.[25]

**Discussion**

### I.   Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[26]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[27]  If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[28]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific

---

[21] *Id.* at ¶ 23.

[22] *Id.*

[23] *Id.* at ¶ 24.

[24] *Id.*

[25] *Id.* at ¶ 9.

[26] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[27] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[28] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

facts showing that there is a genuine issue for trial."[29]  "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[30]

## II.   Defendants' motion for summary judgment [ECF No. 65]

### A.   FLSA and NYLL claims

The defendants argue that Safran's FLSA and NYLL claims fail because he is an "outside sales employee" exempted from federal and state minimum-wage and overtime standards.[31]  The exemption applies to employees whose "primary duty" is "making sales or "obtaining orders or contracts for services or the use of facilities" and "[w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty."[32]  "Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks."[33]  And because outside sales does not include sales made by mail, telephone, or internet, "any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property."[34]

Because Safran used his home to contact potential customers, his home qualifies as one of UHP's places of business.  And Safran visited customers only 18 times in the span of several

---

[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[30] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

[31] ECF No. 65 at 12–13.

[32] 29 C.F.R. § 541.500(a); *see also* N.Y. Lab. Law § 651(c) (same).

[33] 29 C.F.R. § 541.701.

[34] *Id.* § 541.502.

years, so he was not "customarily and regularly" working away from that place of business.  So the defendants fail to meet their initial burden to show an absence of a genuine issue of material fact that the outside-sales exception applies to Safran.

The defendants also argue that Safran cannot pursue overtime-wage claims because he has no records of his overtime and relies solely on his affidavit.[35]  An employee seeking to recover unpaid minimum wages or overtime under the FLSA "has the burden of proving that he performed work for which he was not properly compensated[,]" but the "burden is not to be an impossible hurdle for the employee."[36]  Instead, if an employer's records are inadequate, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of a just and reasonable inference."[37]  Because the lack of records showing overtime work is not dispositive, the defendants fail to show an absence of a genuine issue of fact by pointing to the lack of records alone.[38]  So I deny their motion for summary judgment on Safran's FLSA and NYLL claims.

### B.    Fraud, conversion, and promissory-estoppel claims

The defendants' scattershot briefs make it difficult to parse their arguments, but they repeatedly object that Safran's fraud, conversion, and promissory-estoppel claims are merely re-

---

[35] ECF No. 65 at 15.

[36] *Brock v. Seto*, 790 F.2d 1446, 1447–48 (9th Cir. 1986).

[37] *Id.* at 1448 (quotation and emphasis omitted); *see also Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337 n.15 (S.D.N.Y. 2005) (finding of FLSA liability necessitates finding of liability under NYLL).

[38] I decline to consider the defendants' argument that they had no knowledge of Safran's overtime work because they raised it for the first time in reply.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

worded versions of Safran's breach-of-contract claim.[39]  But Federal Rile of Civil Procedure 8(d)(3) provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  So the defendants are not entitled to summary judgment on this basis.

The defendants also lodge specific objections to Safran's fraud, conversion, and promissory-estoppel claims.[40]  But the defendants apply Nevada law and Safran applies New York law without any analysis of which law should apply to these claims.  Because "[j]udges are not like pigs, hunting for truffles buried in briefs,"[41] I deny the defendants' motion for summary judgment on these claims without prejudice to a proper motion containing a fully developed choice-of-law analysis.

## C.     Retaliation claims

The defendants argue that Safran's retaliation claims based on mere threats are not actionable.[42]  FLSA and NYLL contain anti-retaliation provisions prohibiting employers from punishing employees for engaging in protected activities with adverse employment actions.[43]  The Ninth Circuit has held that a threat of physical harm is an adverse employment action[44] and has suggested that a threat of future discharge or loss of benefits is one, too.[45]  Safran argues that the threat to air "dirty laundry" and the false rumor of an SEC investigation constitute adverse

---

[39] ECF No. 65 at 7–9, 14.

[40] *Id.*

[41] *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

[42] ECF No. 67 at 7.

[43] *See* 29 U.S.C. § 215(a)(3); N.Y. Lab. Law § 215(a).

[44] *Ford v. Alfaro*, 785 F.2d 835, 841–42 (9th Cir. 1986).

[45] *Acosta v. Zhao Zeng Hong*, 704 F. App'x 661, 665 (9th Cir. 2017).

employment actions,[46] but he does not identify a case holding that such amorphous threats or false rumors are adverse employment actions.  So I grant the defendants' motion for summary judgment on Safran's retaliation claims.

### D. Loan claims

The defendants argue that the loans are unenforceable under New York's usury statute.[47] However, "a borrower may be estopped from interposing a usury defense when, through a special relationship with the lender, the borrower induces reliance on the legality of the transaction."[48]  "Otherwise, a borrower could void the transaction, keep the principal, and achieve a total windfall, at the expense of an innocent person, through his own subterfuge and inequitable deception."[49]  Here, the record shows that Beplate specified the terms of the loan.  It also reflects that they had a special relationship: first as friends, and later as employer and employee.  So Beplate is estopped form invoking New York's usury statute.

The defendants also argue that Safran's loan claims fail as a matter of law because he fails to join Safran's wife, who jointly controls Safran's bank account, and Harper, who received the funds, as required by Rule 19(a) of the Federal Rules of Civil Procedure.[50]  With some limitations not applicable here, Rule 19(a) requires a party to be joined in a suit if she "claims an interest relating to the subject of the action and is so situated that the disposition of the action in

---

[46] Safran also argues that if the defendants terminated him in February 2015, they did so in retaliation for his complaint about not being paid.  But Safran's third amended complaint only alleges that the threats constituted retaliatory conduct, and Safran has not yet moved to amend that complaint.

[47] ECF No. 65 at 10–11.

[48] *Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 743 (N.Y. 1992).

[49] *Id.*

[50] ECF No. 65 at 18.

1   [her] absence may (i) as a practical matter impair or impede [her] ability to protect that interest

2   or (ii) leave any of the persons already parties subject to a substantial risk of incurring double,

3   multiple, or otherwise inconsistent obligations by reason of [her] claimed interest."  "The

4   moving party has the burden of persuasion" under Rule 19(a).[51]  The defendants fail to explain—

5   and I do not perceive—why Harper or Safran's wife are indispensable parties when they were

6   not parties to the loan agreements.  Because the defendants do not meet their burden to show that

7   Harper and Safran's wife are indispensable parties, I deny their motion for summary judgment

8   on Safran's loan-related claims.[52]

9        **E.    Leave to amend answer**

10       The defendants request leave to amend their answer to assert three affirmative defenses

11  addressed above: usury, the outside-sales exception, and failure to join indispensable parties.[53]

12  Safran does not respond.  Rule 15(a)(2) provides that "a party may amend its pleading only with

13  the opposing party's written consent or the court's leave.  The court should freely give leave

14  when justice so requires."  The district court's discretion to grant leave to amend is guided by

15  various factors, including "bad faith, undue delay, prejudice to the opposing party, futility of

16  amendment[,] and whether the [party] has previously amended the [pleading]."[54]  I deny the

17

---

18  [51] *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

19  [52] The defendants also argue in reply that I should dismiss the case for lack of subject-matter
    jurisdiction if the loan claims fail because the claimed damages would then be less than $75,000.
    ECF No. 65 at 16–17.  I reject this argument because the loan claims survive and, in any event, it
20  is legally meritless.  *See, e.g.*, *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir.
    2018) ("[W]hen the amount in controversy is satisfied at removal, any subsequent amendment to
21  the complaint or partial dismissal that decreases the amount in controversy below the
    jurisdictional threshold does not oust the federal court of jurisdiction.").

22  [53] The parties are advised that this district's local rules require separate documents to be filed for
    each type of relief requested.  *See* L.R. IC 2-2(b).
23
    [54] *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (internal
    quotation marks and citation omitted).

1  defendants' request with respect to the usury defense because, as discussed above, it is futile.  I

2  grant the defendants' request with respect to his failure-to-join-indispensable-parties defense

3  because they did not fully develop their analysis when briefing this motion.  And I grant the

4  defendants' request with respect to the outside-sales exception because a reasonable factfinder

5  could find that it applies to periods of Safran's employment.

6  **III.     Safran's motion for summary judgment [ECF No. 66]**

7           The defendants assert two counterclaims in their fourth amended answer.[55]  First, they

8  allege that Safran instituted suit in New York in violation of the employment agreement's forum-

9  selection clause, rendering him liable for the costs of defending the suit in New York.[56]  Second,

10 they allege that the faithless-servant doctrine precludes Safran from any recovery and entitles the

11 defendants to "any and all wages, compensation and stock paid to the plaintiff after the

12 distribution of pornographic materials to fellow employees."[57]

13          **A.     Attorneys' fees**

14          The employment agreement includes a forum-selection clause providing that disputes

15 should be commenced in Nevada but does not provide for any recovery of attorneys' fees and

16 costs.  The defendants argue that Safran's violation of the forum-selection clause entitles them to

17 attorneys' fees under Rule 11 or the court's inherent equitable power.  But Rule 11 imposes

18 procedural requirements that the defendants have not satisfied.  And federal courts can only

19 impose attorneys' fees under their inherent power if "a party has acted in bad faith, vexatiously,

20 wantonly, or for oppressive reasons."[58]  Defendants have not responded to Safran's motion with

21 ────────────────────

22 [55] ECF No. 58.

   [56] *Id.* at ¶¶ 17–19.

23 [57] *Id.* at ¶¶ 20–21.

   [58] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

evidence that he acted in bad faith.  So I enter summary judgment in favor of Safran on the

defendants' counterclaim for attorney's fees, without prejudice to a motion for attorney's fees

under Rule 54 at the proper time.

### B.    Faithless-servant doctrine

Under the faithless-servant doctrine in New York law, "the misbehavior of a disloyal

employee forfeits that employee's compensation."[59]  Courts have applied two different

standards.[60]  Under one standard, the doctrine applies where the employee's "misconduct and

unfaithfulness . . . substantially violates the contract of service."[61]  But a single act is not

substantial under that standard.[62]  Under the other standard, "misconduct by an employee that

rises to the level of a breach of a duty of loyalty or good faith is sufficient to warrant

forfeiture."[63]

The parties agree that Nevada has not recognized the doctrine,[64] but again do not include

any analysis of whether New York or Nevada law should apply to this claim.  Even assuming

that the doctrine applies, however, the defendants have responded with evidence showing a

genuine issue of fact for trial.  The defendants rely on Safran's e-mail attaching graphic cartoons,

but a single act does not qualify under the first standard.  And the defendants do not explain—or

identify cases showing—that such an email rises to the level of a breach of duty of loyalty or

good faith.  So I grant summary judgment in Safran's favor on this counterclaim as well.

---

[59] *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 440 (S.D.N.Y. 2015).

[60] *Id.*

[61] *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 201 (2d Cir. 2003) (quotation omitted).

[62] *Id.*

[63] *Id.* at 202.

[64] ECF Nos. 66 at 29; 67 at 15.

**Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that the defendants' motion for summary judgment **[ECF No. 65] is GRANTED in part and DENIED in part**.  I grant summary judgment in favor of the defendants on Safran's retaliation claims.  I deny the motion in all other respects.

IT IS FURTHER ORDERED that Safran's motion for summary judgment on the defendants' counterclaims **[ECF No. 66] is GRANTED.**  I grant summary judgment in favor of Safran on the defendants' counterclaims.

IT IS FURTHER ORDERED that **this case is referred to the magistrate judge to schedule a mandatory settlement conference**.  The parties' deadline to file the joint pretrial order is tolled until ten days after that settlement conference.

Dated: May 28, 2020

_____
U.S. District Judge Jennifer A. Dorsey